UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLARK COUNTY, WASHINGTON,<br>1300 Franklin Street,<br>Vancouver, WA 98666,<br><br>CITY OF VANCOUVER, WASHINGTON,<br>210 E.13th St.,<br>Vancouver, WA 98668,<br><br>CITIZENS AGAINST RESERVATION<br>SHOPPING (CARS),<br>703 Broadway, Suite 610<br>Vancouver, WA, 98660,<br><br>AL ALEXANDERSON,<br>4219 NW 328th Street,<br>Ridgefield, WA 98642,<br><br>GREG AND SUSAN GILBERT,<br>2600 NW 329th Street,<br>Ridgefield, WA 98642,<br><br>DRAGONSLAYER, INC.,<br>225 W. 4th Street<br>La Center, WA 98629, and<br><br>MICHELS<br>DEVELOPMENT, LLC<br>8200 Tacoma Mall Blvd.<br>Lakewood, WA 98499,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE<br>INTERIOR<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>KENNETH SALAZAR, *in his official capacity as* Secretary, U.S. Department of the Interior,<br>1849 C Street, N.W.,<br>Washington, DC 20240, | Case No. 1:11-cv-00278<br>Judge Richard W. Roberts |

| | |
|---|---|
| BUREAU OF INDIAN AFFAIRS<br>U.S. Department of the Interior<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>LARRY ECHOHAWK, *in his official capacity<br>as* Assistant Secretary - Indian Affairs<br>U.S. Department of the Interior<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>NATIONAL INDIAN GAMING<br>COMMISSION<br>1441 L Street NW, Suite 9100<br>Washington, DC 20005, and<br><br>TRACIE STEVENS, *in her official capacity<br>as* Chairwoman,<br>National Indian Gaming Commission<br>1441 L Street NW, Suite 9100<br>Washington, DC 20005,<br><br>                    *Defendants.* | |

### COWLITZ INDIAN TRIBE'S REPLY IN FURTHER SUPPORT OF ITS
### <u>MOTION TO INTERVENE</u>

The Cowlitz Indian Tribe ("Tribe") demonstrated in its Motion to Intervene that it is entitled to intervene both permissively and as a matter of right. In its Response, the United States requests that the Court grant the Tribe's request for permissive intervention. *See* United States' Response to the Cowlitz Indian Tribe's Motion to Intervene at 5 (hereinafter "Government Response"). However, although the government does not dispute that the Tribe has comprehensive economic, property, and legally-protected interests at stake in this litigation, it nevertheless insists that it can adequately represent the Tribe's interests in the defense of the Secretary of the Interior's December 17, 2010 decision to accept trust title to 151.87 acres of land for the benefit of the

Cowlitz Tribe, the agency action at issue, and accordingly it opposes the Tribe's request for intervention as a matter of right.

That conclusion is wrong in two distinct respects. First, although we agree with the government that the December 17, 2010 decision by the Secretary was correct, we disagree on the grounds that support that decision. In this fundamental respect, the government cannot, because it will not, adequately represent our interests. Second, we are not the only tribe, to whom the government may owe fiduciary duties, involved in this matter. To the contrary, the Confederated Tribes of the Grand Ronde Community of Oregon ("Grand Ronde") has brought a separate but virtually identical action seeking to reverse the Secretary's decision. We anticipate that the Grand Ronde will likewise argue that the government has a fiduciary duty to advance its interests, which directly conflict with those of the Tribe. It is axiomatic that where the government is burdened by such a conflict, it cannot adequately represent the Tribe's interests. Taken together, these factors call into question the ability of the Government to adequately represent the interests of the Cowlitz Indian Tribe in this litigation, and compel a conclusion that the Tribe is entitled to intervention as of right pursuant to Rule 24(a)(2), Fed. R. Civ. P. 24(a)(2).

## I.     THE TRIBE IS ENTITLED TO INTERVENE AS OF RIGHT

Of the four factors required for intervention of right under Rule 24(a), the United States only contests one: whether another party (in this case the United States) can adequately represent the movant. *See* Government Response at 3-4. For the reasons explained in more detail below, the Tribe more than satisfies its "minimal" burden to show that the Government's representation "may be" inadequate in this case. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

### A.     The United States Has Adopted a More Narrow Construction of *Carcieri*

The Plaintiffs' Complaint attacks the Secretary's decision to accept land in trust for the Cowlitz Tribe based, *inter alia*, on the Supreme Court's decision in *Carcieri v. Salazar,* 239 S. Ct. 1058

3

(2009), alleging the Tribe was not recognized and not under federal jurisdiction in June 1934 when the Indian Reorganization Act ("IRA") was passed, and that therefore the Tribe is ineligible for the benefits of the IRA, including Secretarial land acquisitions. Compl. ¶¶ 69-70. The Tribe fully supports and intends to defend as correct the Secretary's decision to acquire land in trust for Cowlitz because the Tribe was under federal jurisdiction in 1934 and thus is entitled to the full range of benefits afforded by the IRA. However, the United States reached this conclusion on legal theories and arguments that diverge from (because they are more narrow than) those that will be presented by the Tribe.

The 2009 *Carcieri* decision limits the Secretary's authority to take land in trust under Section 5 of the IRA to those federally recognized tribes that were "under federal jurisdiction" in 1934 when the IRA was passed. The Secretary's ROD articulated and applied a two-step test to the Cowlitz factual record, from which it determined that the Cowlitz Tribe was under federal jurisdiction in 1934 and that therefore the Secretary has authority acquire the subject land in trust and proclaim it to be the Tribe's reservation. The Cowlitz Tribe believes and will argue that the Secretary's ROD may also be sustained on alternative legal grounds – namely, that as a result of Congress' Constitutionally-derived plenary legal jurisdiction over all Indian tribes, any tribe that can be shown to have existed as a tribe in 1934 is, by definition, a tribe that was under federal jurisdiction in 1934. This Constitutionally-based *Carcieri* argument, which provides additional grounds for upholding the Secretary's decision, is far broader and substantially different from the Government's arguments in support of the Secretary's decision.

Issues related to the interpretation and application of the *Carcieri* decision could be dispositive of this and related cases. It is in the Tribe's best interest to ensure that all legal arguments supporting the Secretary's decision are presented to the court, even ones that have not been adopted by the Department. Our disagreement is more than just a mere "quibble over

4

litigation tactics." *Mich. Gambling Opposition v. Norton (MichGO)*, No. 1:05-cv-02385-RJL (D.D.C. Sept. 9, 2005) (citations omitted).[1]  The Tribe is entitled to intervene as of right so that it may defend the historically significant interests at stake in this litigation by presenting its materially different approach to these potentially dispositive issues.

>    B.   **The Government's Ability to Adequately Represent the Tribe is Impaired by Grand Ronde's Status as a Plaintiff in the Related Case.**

The Grand Ronde Tribe has brought a virtually identical companion case in front of this Court, seeking to overturn the Secretary's decision and to significantly impair the Cowlitz Tribe's interests.  Grand Ronde filed its lawsuit to overturn the Secretary's decision to accept land in trust for the Cowlitz Tribe one day after this suit was filed, and the case was assigned to the same judge. *See The Confederated Tribes of the Grand Ronde Community v. Salazar,* No. 1:11-cv-00284.  Both lawsuits stem from the same operative facts and law, particularly with respect to the *Carcieri* claims, and there is a strong likelihood that the cases will be consolidated.  Even if the cases are not consolidated, the United States still will defend its decision based on the same grounds in both lawsuits.

The difficult issues raised by the Government's role in a case where two tribal nations are on opposite sides of a dispute have been addressed in the context of Rule 19, which is analyzed based on essentially the same considerations as is Rule 24(a).  In *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992), a case cited by the Government in its Response, the Ninth Circuit held that the United States would not adequately represent the interests of an absent tribe even though they "might share the same ultimate goal" because the presence of tribes on both sides of the suit created

---

[1] The Government's Response relies on the *MichGO* case for support of the United States' view that the Tribe shares nearly identical interests with the Government in defending the Secretary's fee-to-trust acquisition decision.  The *MichGO* Court did reject the Match-E-Be-Nash-She-Wish Band of Pattawatomi Indians' motion to intervene as of right (while allowing permissive intervention) because the Court found that a difference of opinions between the United States and the Tribe over a self-stay entered into by the United States was not enough to make their differences diverge.  In the present litigation, the differences are over matters far more significant than a self-stay; indeed, the Tribe's and the United States' divergent legal theories pertain to what will likely be the dispositive issue in the case.  Therefore *MichGO* is inapposite.

a "potential conflict of interests." *Id.* Notwithstanding its need to defend the reasonable and legally sound agency administrative action at issue here, the Government, and the Secretary in particular, owe fiduciary obligations to all tribes as part of the inherent trust responsibility. *See, e.g., United States v. White Mountain Apache,* 537 U.S. 465, n.3 (2003). The Tribe's intervention as of right would help to mitigate this potential conflict.

The Government's assertion that it can represent adequately the Tribe's interests is not well supported by its reliance on other fee-to-trust cases, which are distinguishable from this case.[2] For example, *Sac and Fox Nation of Mo. v. Norton*, 240 F.3d 1250 (10th Cir. 2001), *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001), and *Neighbors of Casino San Pablo v. Salazar*, No. 1:09-cv-02384-RJL (D.D.C. Feb. 16, 2011) each involved tribal nations that already had established homelands and already had existing casino enterprises to fuel economic development and to support fully-functioning tribal governments.[3] Thus, the interests at stake in those cases pertained solely to further economic development opportunities. Here, the Tribe has far more at stake than pure economic interests – the Tribe has fundamental legal, proprietary and sovereign interests that are implicated by the Department's decision, which interests it is uniquely qualified to defend. The Government's interest in defending the substantive and procedural validity of its agency decision is qualitatively different, and simply cannot not rise to the same level of significance as the Tribe's interest in defending its sovereign authority and fulfilling its goals of establishing a homeland and

---

[2] *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) also does not support the Government's assertion. In that case, the court found that the Salt River Pima Maricopa Tribe was not an indispensable party under Rule 19, but the case involved the licensing of a joint water storage area that would serve not just the Tribe but also the cities of Phoenix, Scottsdale, Mesa, and Tempe, Arizona. The United States and the cities all shared the same motives and end goals as did the Tribe -- the protection of the communal water resource -- and accordingly, the 9th Circuit found that the Community's interests were adequately represented by the other parties. In this case, only the Cowlitz Tribe will enjoy beneficial use of the trust land, and as explained in further detail below, its interests in those sovereign lands are distinct from the federal government's interest in simply defending the agency decision establishing them.

[3] The *San Pablo* case, as well as the *MichGO* and *TOMAC v. Norton*, No. 1:01-cv-00398-JR (D.D.C. June 10, 2005) cases, also did not involve the potential conflict issues found here because they did not involve opposing tribal nations as plaintiffs.

achieving economic self-sufficiency and self-determination. If Plaintiffs prevail, the United States will suffer to the extent that an agency decision has been overturned, but the Tribe will lose its homeland and all the attendant attributes of sovereignty for a second time. In short, the Government cannot represent the compelling and uniquely tribal interests at stake in this case.

## II.    CONCLUSION

For the foregoing reasons, and for those stated in its Memorandum in Support of Intervention, the Tribe respectfully submits that its Motion to Intervene should be granted pursuant to Rule 24(a)(2) or, in the alternative, Rule 24(b).

Dated: July 27, 2011

Respectfully Submitted,

/s/Robert D. Luskin
Robert D. Luskin (DC Bar No. 293621)
V. Heather Sibbison (DC Bar No. 422632)
Edward D. Gehres, III (DC Bar No. 478565)
Suzanne R. Schaeffer (DC Bar No. 429735)
PATTON BOGGS LLP
2550 M Street NW
Washington DC  20037
P: 202.457.6000
F: 202.457.6315
rluskin@pattonboggs.com
hsibbison@pattonboggs.com
egehres@pattonboggs.com
sschaeffer@pattonboggs.com

*Counsel for the Cowlitz Indian Tribe*

5183669

## CERTIFICATE OF SERVICE

     I hereby certify that on July 27, 2011, I electronically filed the foregoing **Cowlitz Indian Tribe's Reply in Further Support of its Motion to Intervene** using the CM/ECF system which will send notification of such filing to all counsel of record.

     By : /s/Edward D. Gehres, III
     Edward D. Gehres, III

*Counsel for the Cowlitz Indian Tribe*

5183669